**FILED**

September 22, 2025

**Fifteenth Court of Appeals
Christopher A. Prine
Clerk of Court**

# NO. 15-25-00012-CV

_____

IN THE COURT OF APPEALS
FOR THE FIFTHTEENTH DISTRICT OF TEXAS

_____

**State of Texas, acting by and through the Texas Facilities Commission, for and on behalf of the Texas Health and Human Services Commission; The Texas Facilities Commission; Mike Novak, in his Official Capacity as Executive Director of the Texas Facilities Commission; The Texas Health and Human Services Commission; and Rolland Niles in his Official Capacity as Deputy Executive Commissioner for the System Support Services Division of the Texas Health and Human Services Commission ,**

*Appellants,*

*v.*

*8317 Cross Park, LLC,*

*Appellee.*

_____

On Interlocutory Appeal from the 98 District Court
of Travis County, Texas

_____

## [Proposed] Supplemental Brief of Appellee

_____

R. Kemp Kasling
State Bar No. 11104800
Law Offices of R. Kemp Kasling
5806 Mesa Drive, Suite 300
Austin, Texas 78731
Telephone: (512) 472-6800
Facsimile: (512) 472-6823
Email: kkasling@kaslinglaw.com

CARDWELL, HART & BENNETT, LLP
J. Bruce Bennett
State Bar No. 02145500
807 Brazos, Suite 1001
Austin, Texas 78701
Telephone: 512-322-0011
Facsimile: 512-322-0808
jbb.chblaw@me.com

ATTORNEYS FOR APPELLEE 8317 CROSS PARK, LLC

## Table of Contents

**Page**

Table of Contents ...........................................................................................................2

Table of Authorities........................................................................................................3

Argument........................................................................................................................4

I.  HHSC's request for exceptional items does not support the Government..........4

II.  Chapter 114 is not limited to contracts with one state agency ...........................5

III. The Texas Facilities Commission regulations applied to Novak's purported
    termination. ...................................................................................................7

Conclusion and Prayer....................................................................................................8

Certificate of Compliance...............................................................................................9

Certificate of Service .....................................................................................................9

# Table of Authorities

**Page(s)**

## Cases

*Progressive Cnty. Mut. Ins. Co. v. Caltzonsing*,
658 S.W.3d 384 (Tex. App.—Corpus Christi-Edinburg 2022, no pet.) ............................7

## Statutes

Tex. Civ. Prac. & Rem. Code
§§ 114.001(2), 114.003 ............................................................................................6
§§ 114.002–.003 ......................................................................................................6
§ 114.003 .................................................................................................................6

Tex. Gov't Code § 311.012(b) ..............................................................................................6

## Other Authorities

41 Tex. Reg. 7709 ............................................................................................... …7

Antonin Scalia & Bryan A. Garner, Reading Law (2012) ..................................................... 6

## Regulations

1 Tex. Admin. Code §§ 115.20–22 ...................................................................................... 8

**To the Honorable Fifteenth Court of Appeals:**

Appellee 8317 Cross Park Austin Associates respectfully submits this supplemental brief addressing an inaccuracy in the Government's reply and addressing two arguments from the Government's reply that did not appear in its opening brief. None of the Government's new arguments undermines the district court's order denying the Government's plea to the jurisdiction.

## Argument

### I. HHSC's request for exceptional items does not support the Government.

As 8317 Cross Park recounted in the background section of its brief, HHSC's judicially noticeable FY2024–25 biennial baseline appropriations request sought for less money under "Rent – Building" than HHSC projected it needed for the biennium. Appellee Br. 11. HHSC included the remainder in an exceptional item request. *Id.* 11–12.

It's the significance of that exceptional item request that the Government's reply inaccurately describes. In the district court, the Government presented no evidence showing that anyone at HHSC (or anywhere else) considered whether HHSC lacked funds to pay rent, let alone evidence that HHSC *actually* lacked funds or believed it lacked funds. *See* Appellee Br. 53–55. In its reply, the Government relies upon HHSC's early estimates in its exceptional item request as some evidence that "there are multiple variables that impact the certification for funding and the analysis can be complex." Reply Br. 7–8. The Government, however, cannot point to any evidence that HHSC lacked sufficient funds or ever considered whether it had sufficient funds—regardless of the variables.

The Government relies on the exceptional item request to suggest that HHSC received less funding than it needed for rent. *See* Reply Br. 6–14, 24. However, HHSC made that request in early September 2022, nearly a year before Novak's purported termination of the

8317 Cross Park Lease and Niles' incomplete certification. *See* Appellee Br. App'x Tab 6. Thus, HHSC advised in the request that, "[a]s additional information becomes available, the agency will be able to more accurately assess its needs." *Id.*

By mid-2023, it was clear that HHSC had enough money. For example, HHSC's exceptional item request "assumed [a] 9.9% year-over-year increase in the Consumer Price Index for the 2024- 25 biennium." Reply Br. 10. But by the time the Legislature enacted the GAA, the CPI had fallen precipitously. *See id.* 11. Leaving no doubt HHSC knew it had enough funds, Niles certified $93.7 million in annual lease expenses for the upcoming biennium, tens of millions less than appropriated. *See* Re- ply Br. 30; Appellee Br. 55. There is no evidence that Niles' certified amount did not include inflation. *Contra* Reply Br. 30–31. But, even if it did not, he surely knew there was sufficient rent money. Even at a grossly exaggerated annual inflation rate of 10%, $93.7 million would be $103 million in year one and $113 million in year two—totaling more than $20 million *less* than was appropriated for rent across the biennium.

The most significant fact is that no one has ever certified that funds were unavailable to pay rent due under the 8317 Cross Park Lease, there's no evidence anyone thought funds were unavailable to pay rent due under the 8317 Cross Park Lease, and all evidence in the record suggests those funds were available and that Niles and Novak knew the funds were available.

## II. Chapter 114 is not limited to contracts with one state agency.

As 8317 Cross Park pointed out, the 8317 Cross Park Lease easily fits within the plain text and fair meaning of Texas Civil Practice & Remedies Code Chapter 114's waiver of sovereign immunity. Appellee Br. 19–46. The Government's reply simply restates its arguments from its opening brief. But the reply also makes a new argument that Chapter 114 turns on the number of state entities that are contractual counterparties. The Government

argues that Chapter 114 does not apply because "[t]he contract at issue falls within Chapter 2167 of the Government Code, which expressly ***involves two state agencies*** and the State of Texas as lessee; in contrast, Chapter 114 requires a contract for ***a single state agency***." Reply Br. 16–18 (emphases added).

The Government's new argument is without merit. Chapter 114 speaks of "a state agency" and "the state agency." *E.g.*, Tex. Civ. Prac. & Rem. Code §§ 114.001(2), 114.003. In Texas statutes, "[t]he singular includes the plural." Tex. Gov't Code § 311.012(b). Indeed, that rule is a fundamental canon of interpretation because it "is simply a matter of common sense and everyday linguistic experience." Antonin Scalia & Bryan A. Garner, Reading Law 130 (2012). So "state agency" includes "state agencies." Chapter 114's fair meaning thus does not limit its waiver to single-agency contracts.

The Government's new argument also fails because Chapter 114's plain text shows that the act of a single state agency triggers Chapter 114's waiver no matter how many other agencies also trigger the waiver. *See* Appellee Br. 24–25. "A state agency . . . *that enters* a contract subject to this chapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract." Tex. Civ. Prac. & Rem. Code § 114.003 (emphasis added). Chapter 114's trigger is the *act* of a state agency entering a specified contract, not the contract itself. Thus, so long as at least one state agency performs that act, sovereign immunity is waived to adjudicate "a claim for breach of a written contract for engineering, architectural, or construction services . . . brought by a party to the written contract." *Id.* §§ 114.002–.003. This is exactly what happened here. *See* Appellee Br. 25–35.

Nothing in Chapter 114 supports the Government's proposed limit on the waiver's scope.

### III. The Texas Facilities Commission regulations applied to Novak's purported termination.

8317 Cross Park demonstrated that Novak's purported termination of the 8317 Cross Park Lease was outside his authority because, among other things, Novak's actions violated the Texas Facilities Commission's regulations that bind him. *See* Appellee Br. 56–58.

The Government does not dispute that Novak's purported termination conflicted with those regulations. They argue only that those regulations "are irrelevant because [they] were not in existence at the time the 2014 Lease was entered into so these regulations do not apply to this Lease." Reply Br. 31. The Government is wrong.

The Government's new argument is misguided because it applies a rule of *contract interpretation* to an issue that does not turn on interpreting a contract. The government relies on a decision that recites "[t]he general rule . . . that the laws which are in existence at the time of the making of the **contract** are impliedly incorporated **into the contract**." *Progressive Cnty. Mut. Ins. Co. v. Caltzonsing*, 658 S.W.3d 384, 393 (Tex. App.—Corpus Christi-Edinburg 2022, no pet.) (citation omitted; emphases added) (cited at Reply Br. 31). 8317 Cross Park does not rely on the regulations to support its breach of contract claim or for any other contract issue. It relies on them to support its *ultra vires* claim, which does not depend on the lease's terms and does not arise from any nonperformance under the lease. *See* Appellee Br. 56–58; *contra* Government's Mot. Strike 10 (suggesting 8317 Cross Park "argues that Appellants acted *ultra vires* in relation to their performance under the Lease.").

The regulations matter because they plainly govern Novak's authority to terminate the 8317 Cross Park Lease: They "set out the procedure for the cancellation of a lease due to a lack of funding"—an administrative function, not a contractual one. 41 Tex. Reg. 7709, 7709 (Sept. 16, 2016) (adopting regulations). Novak engaged in actions that those regulations govern—"process[ing] . . . *any request* to cancel a lease due to a lack of funding." *See id.*

7

(emphasis added). And the date that controls is the date of the request to cancel a lease based on lack of funding, *see id.* at 7710 ("Effective date: October 3, 2016"), not the date of the lease whose cancellation is requested, *see* 1 Tex. Admin. Code §§ 115.20–22 (no mention of lease execution date). Novak had no authority to ignore the regulations. By ignoring them anyway, his actions were *ultra vires*.

## Conclusion and Prayer

The Court should affirm the district court's order denying the Government's plea to the jurisdiction. Alternatively, if the Court finds that 8317 Cross Park's allegations are insufficient, it should remand for repleading.

Respectfully submitted,

<table>
<tr><td>

R. Kemp Kasling
State Bar No. 11104800
Law Offices of R. Kemp Kasling
5806 Mesa Drive, Suite 300
Austin, Texas 78731
Telephone: (512) 472-6800
Facsimile: (512) 472-6823
Email: kkasling@kasling.com

</td><td>

CARDWELL, HART & BENNETT, LLP
J. Bruce Bennett
State Bar No. 02145500
807 Brazos, Suite 1001
Austin, Texas 78701
Telephone: 512-322-0011
Facsimile: 512-322-0808
jbb.chblaw@me.com

</td></tr>
</table>

By: */s/ R. Kemp Kasling*
R. Kemp Kasling

ATTORNEYS FOR APPELLEE 8317 CROSS PARK, LLC

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

Pursuant to Tex. R. App. P. 9.4(i)(3), the undersigned certifies this brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2)(B). The brief was prepared using Microsoft Word 2019 (Version 16.46), and according to the program's word count, the brief contains 2112 words, exclusive of the exempted portions in Tex. R. App. P. 9.4(i)(1).

By: */s/ R. Kemp Kasling*
R. Kemp Kasling

## CERTIFICATE OF SERVICE

I hereby certify that a correct copy of the foregoing document was served by electronic means on this 26 day of August 2025 to the following counsel of record:

JENNIFER COOK
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548/Mail Stop 019-1
Austin, Texas 78711-2548
Tel: (512) 475-4098
Fax: (512) 302-0667
jennifer.cook@oag.texas.gov

Attorney for Appellants State of Texas, acting by and through the Texas Facilities Commission, for and on behalf of the Texas Health and Human Services Commission; The Texas Facilities Commission; Mike Novak, in his Official Capacity as Executive Director of the Texas Facilities Commission; The Texas Health and Human Services Commission; and Rolland Niles in his Official Capacity as Deputy Executive Commissioner for the System Support Services Division of the Texas Health and Human Services Commission.

By: */s/ R. Kemp Kasling*
R. Kemp Kasling